[No. 20911.   Department Two. — July 8, 1892.]

THE PEOPLE, RESPONDENT, v. HUGH DEVINE, APPELLANT.

| 95  | 227 |
|-----|-----|
| 100 | 463 |

| 95  | 227 |
|-----|-----|
| 122 | 372 |

| 95  | 227 |
|-----|-----|
| 138 | 471 |

| 95  | 227 |
|-----|-----|
| 149 | 261 |

CRIMINAL LAW — LARCENY — FELONIOUS INTENT — INSUFFICIENCY OF EVIDENCE. — To constitute the offense of larceny, there must be a felonious intent, and where there is an absence of proof of such intent, and the evidence tends to prove that the property taken was honestly believed to be the property of the defendant accused of larceny, the fact that he took and carried away the property of another does not justify a verdict of larceny.

ID. — APPROPRIATION OF LOST PROPERTY FOUND — CONSTRUCTION OF CODE — INSTRUCTION. — Section 485 of the Penal Code, providing that one who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property, without trying to find the owner and restore the property to him, is guilty of larceny, relates in terms to property lost and found, and does not apply to a case where property comes into the possession of a party who does not know or suspect it to be the property of another; and an instruction based on that section, given in such a case, where there is no evidence of the finding of any lost property, is prejudicially erroneous.

ID. — INAPPLICABLE INSTRUCTION — MISLEADING JURY — PREJUDICIAL ERROR. — Although in some cases an inapplicable instruction which is correct as matter of law can do no harm, yet when it is liable to mislead a jury to the prejudice of one of the parties, it becomes as grave an error as though it were not correct as an abstract proposition of law.

ID. — PREJUDICIAL CONDUCT OF DISTRICT ATTORNEY — ALLUSIONS TO OFFENSE NOT IN ISSUE — FELONIOUS INTENT. — Statements, questions, and remarks by the district attorney, in the presence of the jury, in reference to incompetent proposed evidence of previous similar offenses of the defendant, not in issue, for the purpose of leading the jury to believe that the offense charged was committed with felonious intent, the contrary being claimed and testified to on behalf of the defendant, are calculated to prejudice the substantial rights of the defendant.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*R. Irwin, J. S. Clark,* and *Bradley & Farnsworth,* for Appellant.

*Attorney-General Hart, Deputy Attorney-General Layson, M. E. Power,* and *D. L. Phillips,* for Respondent.

SHARPSTEIN, J. — " Larceny is the felonious stealing,

taking, carrying, leading, or driving away the personal property of another." (Pen. Code, sec. 484.) In this case the evidence is sufficient to justify a jury in finding that appellant took and carried away the property of another; but insufficient to justify the finding that appellant *feloniously* stole the same. Therefore the evidence is insufficient to justify the verdict of guilty of larceny against the defendant, and for that reason he is entitled to a new trial. The evidence shows that the appellant and Robert Doherty occupy adjoining tracts of land, and that each of them keeps upon his own tract a considerable number of hogs. Appellant, wishing to sell some of his hogs, directed two men in his employment to collect his hogs in a pen or inclosure, so that he might select therefrom some denominated " feeders," to take and sell to a butcher by the name of Sam Bee, whose place of business was several miles distant from appellant's farm. Out of forty or fifty hogs in the corral, appellant, with the assistance of his son and the two men who had driven the hogs into the inclosure, selected eleven " feeders," which were loaded on a wagon, and conveyed to Sam Bee's place, and sold to him by appellant. There is evidence tending to prove that three of these eleven " feeders " were marked with Doherty's mark, which differed materially from appellant's mark, but the difference was not noticed by any save one of several witnesses who had equal opportunities with the appellant of observing the difference in the marks. And the witness who testified to having detected the difference does not state that he mentioned the fact to appellant or any one else. Sam Bee, who purchased the hogs from appellant, testified that he did not observe the difference in the marks until his attention was called to it by William Doherty, about a week after the hogs were sold and delivered to him, Bee, by appellant. No part of the transaction was characterized by secrecy, or attempted concealment. Appellant acted throughout as he would be expected to act if he thought he was dealing with his own property, and the evidence tends strongly to prove

that he really and honestly so thought.   We think that the evidence, coupled with the presumption of innocence, which attends the accused from first to last, sufficient to overcome the presumption of a guilty intent, arising from a wrongful appropriation of the property of another. He was not informed that any of the hogs he carried away and sold were not his own, and all the evidence tends to prove that he honestly believed they were all his own.   There is no evidence to the contrary.   The rule applicable to such a case is illustrated by Sir Matthew Hale as follows: "If the sheep of A stray from the flock of A into the flock of B, and B drives them along with his flock, or by pure mistake shears him, this is not felony; but if he know it to be another's, and marks with his mark, this is an evidence of a felony." (1 Hale P. C. 507.)

"Every taking, by one person, of the personal property of another, without his consent, is not larceny; and this, although it was taken without right or claim of right, and for the purpose of appropriating it to the use of the taker.   Superadded to this there must have been a felonious intent, for without it there was no crime." (*McCourt* v. *People*, 64 N. Y. 583.)

"One person may *take or carry away* the property of another, of the value of fifty dollars, without being guilty of any offense whatever.   But if he does the act *feloniously*, the statutory crime is committed." (*People* v. *Cheong Foon Ark*, 61 Cal. 527.)

"It is clear that a charge of larceny, which requires an intent to steal, could not be founded on a mere careless taking away of another's goods." (1 Bishop's Crim. Law, sec. 320.)

In a note to *State* v. *Homes*, 57 Am. Dec. 260, Mr. Freeman says: "To constitute the offense of larceny, it is absolutely necessary that the taking of the goods be with a felonious intent"; and cites more than a hundred cases in support of that rule.

"We cannot sustain the conviction without confounding the distinction between criminal acts and such as,

however reprehensible, involve only a violation of private rights and injuries, for which there is a remedy only by civil action." (*McCourt* v. *People*, 64 N. Y. 583.)

We think the verdict in this case was largely, if not wholly, owing to an instruction given to the jury, which, although in the language of section 485 of the Penal Code, was not applicable to this case, and was liable to mislead the jury.

The instruction to which we refer reads as follows: "One who finds lost property, under circumstances which gives him knowledge of or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person not entitled thereto, without making a reasonable and just effort to find the owner and restore the property to him, is guilty of larceny."

Section 485 of the Penal Code, of which this instruction is a copy, " relates in terms to property *lost* (in the apparent possession of no one) and *found*." (*People* v. *Walenzuella*, 6 P. C. L. J. 561.)

There is no evidence in this case of the finding of any lost property. The property was in the apparent possession of the appellant, who could not have intended to steal it, unless he knew it was not his own property. The objection to that instruction in this case is, that the jury may have construed the instruction to mean that if appellant had the property of another in his possession, and appropriated it to his own use, without making any effort to find the owner, and restore the property to him. he was guilty of larceny, although he may not have known or suspected it to be the property of another. In other words, if, by the exercise of due circumspection, he might have ascertained that some of the hogs in his possession belonged to some one else, he was as guilty as if he had known that they were the property of some one else.

There are cases in which all the knowledge which a person might have acquired by due diligence is to be imputed to him. But where a felenious intent must be

proven, it can be done only by proving what the accused knew. One cannot intend to steal property which he believes to be his own. He may be careless, and omit to make an effort to ascertain that property which he thinks his own belongs to another; but so long as he believes it to be his own, he cannot feloniously steal it. We think if this instruction had not been given, the jury, under the instructions which preceded it, would have returned a different verdict.

In *People* v. *Buelna*, 81 Cal. 135, one of the defenses was, that the defendant found the property as lost property, and took it up in good faith, to be accounted for to the true owner. In that case section 485 of the Penal Code might properly be given as an instruction to the jury. But in this case there is no such defense or claim set up. The two cases are so clearly distinguishable as to deprive what was said in the earlier case of any weight upon the question we are now considering.

In some cases an inapplicable instruction can do no harm, but when it is liable to mislead a jury, to the prejudice of one of the parties, it becomes as grave an error as though it were not "correct as an abstract proposition of law."

We agree with appellant's counsel, that "the statements, questions, and remarks of the district attorney were peculiarly calculated to prejudice the substantial rights of the defendant." We think what was said by this court in *People* v. *Lee Chuck*, 78 Cal. 327, and *People* v. *Bowers*, 79 Cal. 415, peculiarly applicable to the conduct of the district attorney in this case, and we hope the court may not again have occasion to animadvert upon similar conduct of a prosecuting officer.

The record presents no other material errors.

Judgment and order reversed, and cause remanded for a new trial.

McFARLAND, J., concurred.

DE HAVEN, J., concurring. — I am not prepared to say

that the evidence is insufficient to justify the verdict, but I concur in the judgment of reversal because of the error in giving the instruction referred to in the opinion of Mr. Justice Sharpstein, — as to what facts are sufficient to show a larceny of lost property, — and also because of the misconduct of the district attorney in asking the defendant, upon cross-examination, certain questions, and in making a statement in reference thereto in the presence of the jury. The questions were as follows: "You know, as a matter of fact, you had been stealing his hogs right along"; and, " The only reason you have got right now for swearing that you believe that Robert Doherty had an antipathy toward you is because about six years ago he caught you dressing one of his hogs. Is n't that the only reason?" The questions being objected to by the defendant's attorney, they were followed by this statement, made by the district attorney: "I want to show that the only reason that the witness had for believing as he did was because Robert Doherty caught him one time killing one of his hogs. He had testified that Robert Doherty, he believed, had an antipathy against him. We desire to explain why he had that antipathy."

It is not argued here, nor could it be with any degree of seriousness, that these questions were proper, or that the fact offered to be shown was one competent for the jury to consider for any purpose in passing upon the issues involved in the case they were trying. On the contrary, it is apparent that the only object sought by this course of examination, and in the statement made to the court, was to convey to the jury a knowledge of the alleged fact that the defendant was at some prior time guilty of an offense similar to that for which he was then on trial, and that he was at that time caught under such circumstances that he could not interpose the defense of a taking by mistake, — the only defense relied upon in the present case. Such a fact thrown before the jury, and offered to be proven by the testimony of the defendant himself, could not have failed to prejudice the case of defendant. In this case the taking by defendant of

the hogs alleged to have been stolen was not disputed; but the defendant claimed that he had not observed that such hogs bore the mark of the prosecuting witness, and his whole defense depended upon whether the jury should believe his evidence on this point. Under these circumstances, it was very damaging to bring before the jury, in the manner adopted by the district attorney, the fact that upon a previous occasion the defendant had been caught dressing a hog belonging to the same person who was prosecuting him for larceny in this case.

In the case of *Leahy* v. *State*, 31 Neb. 566, the defendant was on trial for a rape, alleged to have been committed upon one Lizzie Schultz, and upon the cross-examination of the defendant, the prosecuting attorney asked him, among other questions, if he did not go to the residence of one B., on the day succeeding that on which he had made the assault on Miss Schultz, and there meeting Miss B. alone, attempt to kiss her and drag her to a lounge. An objection to the question was sustained, whereupon the prosecuting attorney said, in the presence of the jury: "We intend to follow this matter up, and show that he went right over to B.'s, and there tried to hug and kiss Miss B., and drag her to the lounge." The supreme court held that this was error, and said: "It is the duty of a prosecuting officer to conduct the trial of a criminal case according to established rules. He acts in a semi-judicial capacity, and is supposed to act alone from principle, and without bias or prejudice. The state has guaranteed to every one a fair trial, and such trial cannot be had if the prosecution can resort to tricks to secure a conviction. If such practice was sanctioned, it would result, in many cases, in the conviction of innocent persons. The plaintiff in error was on trial for the crime charged in the information. So far as appears, he had not been charged with any other offense, and certainly was not on trial for the second. The statements of the attorney were improper, and in the highest degree prejudicial, and for those causes the judgment is reversed, and the cause remanded for a new trial." The

case of *People* v. *Cahoon*, 88 Mich. 456, and that of *People* v. *Ah Len*, 92 Cal. 282, are the same in principle as the one from which I·have just quoted, and I think, under the rule of these cases, it must be held that the substantial rights of defendant were prejudiced by the mode of examination adopted by the district attorney, and by his statement of the fact which he desired to show. The court below sustained objections to the questions, but this did not in my judgment obviate the injury which the questions and statement must have produced.