[Criminal No. 596. Filed November 3, 1924.]

[229 Pac. 936.]

# DEWEY RESER, Appellant, v. STATE, Respondent.

1. RECEIVING STOLEN GOODS—ACCUSED KNOWINGLY RECEIVING STOLEN PROPERTY FROM ONE HE ASSISTED BEFORE THEFT HELD GUILTY.— Accused who drove S. in automobile "to spot houses to burglarize," but who took no part in larceny by S., and was not present, but subsequently received the stolen property, was guilty of receiving stolen property, if he knew when he received it that it was stolen.

2. CRIMINAL LAW—THIEF NOT ACCOMPLICE OF ONE RECEIVING STOLEN GOODS.—Thief is not accomplice of one who receives stolen property from him, knowing it to have been stolen so as to require corroboration.

3. RECEIVING STOLEN GOODS — WHETHER CIRCUMSTANCES ESTABLISH KNOWLEDGE OF STOLEN CHARACTER OF PROPERTY HELD FOR JURY.— Whether circumstances establish accused's knowledge of stolen character of property received by him is question for jury.

4. RECEIVING STOLEN GOODS—INSTRUCTION ON KNOWLEDGE OF STOLEN CHARACTER OF GOODS RECEIVED HELD REVERSIBLE ERROR.—Instruc-

---

1. What constitutes crime of receiving stolen property, see note in 26 Am. Dec. 261. See, also, 17 R. C. L. 83.

2. Receiver of stolen property as accessory or accomplice of thief, see notes in 20 Ann. Cas. 594; 9 A. L. R. 1397.

3. Necessity of guilty knowledge on part of one, charged with receiving stolen property and sufficiency of proof, see notes in 15 Ann. Cas. 899; 22 L. R. A. (N. S.) 833. See, also, 17 R. C. L. 85.

tion on subject of knowledge of stolen character of goods received
*held* reversible error as authorizing conviction, if facts under which
property was received by accused were such as would have satis-
fied man of ordinary prudence and caution that such property
was stolen.

See (1) 34 **Cyc.**, p. 518.   (2) 16 **C. J.**, p. 683.   (3) 34 **Cyc.**, p. 530
(Anno.).   (4) 34 **Cyc.**, p. 530.

APPEAL from a judgment of the Superior Court
of the County of Pima. George R. Darnell, Judge.
Reversed and remanded.

Mr. John A. Deweese and Mr. Vernon S. Gray, for
Appellant.

Mr. John W. Murphy, Attorney General, and Mr.
A. R. Lynch, Mr. Earl Anderson and Mr. E. W.
McFarland, Assistant Attorneys General, for the
State.

McALISTER, C. J.—Dewey A. Reser was con-
victed of the crime of receiving stolen property
and given an indeterminate sentence in the state
prison of from three to five years. From this judg-
ment and sentence he appeals.

The information charges that one David B. Smith,
*alias* Frank D. Sweeney, stole from Alfred S. Do-
nau certain articles of jewelry, to wit, one gentle-
man's gold watch, one lady's Elgin wrist watch,
one gold match case with diamond, one lavaliere,
rings, pins and chains, all of the value of $750, and
that on or about the first day of October, 1923, the
appellant "did willfully, unlawfully, knowingly and
feloniously, and for his own gain and to prevent
the owner, the said Alfred S. Donau, from again
possessing his personal property, receive from said
David B. Smith, *alias* Frank D. Sweeney, the said
personal property, the said defendant then and there

well knowing the same to have been stolen as aforesaid.''

A number of errors, all based upon the giving of certain instructions, or the refusal to give others, are assigned, but they raise only three propositions. One of these is that the court erred in refusing to instruct a verdict for appellant upon the ground: First, that he was informed against for receiving stolen property knowing it to have been stolen when all the testimony in the case tended to prove, if anything at all, that he was an accomplice of Smith, *alias* Sweeney, in the commission of the burglaries and larcenies testified to by the latter, and that therefore he could not be guilty of the offense of receiving, since he could not receive property from himself; and, second, that the only testimony tending to connect him with the crime charged was that of Smith, the alleged thief in the case, and he was an accomplice. The state upon the other hand contends that the corroboration of Smith's testimony was sufficient, even though he was an accomplice; but, regardless of the correctness of this contention, he was not under the evidence an accomplice of appellant in the offense of receiving, and his testimony alone would sustain the conviction.

Appellant's contention is based upon the well-settled rule of law that one guilty of larceny cannot also be adjudged guilty of the offense of receiving the property stolen, for the simple reason that he cannot receive it from himself. *Leon* v. *State*, 21 Ariz. 418, 9 A. L. R. 1393; 189 Pac. 433. But it is immaterial that he may have been guilty of the larceny of the goods he is alleged to have received, in view of the fact that the reason for the rule disappears when it is disclosed that he was not present at the caption and asportation of the property by the principal thief, Smith, who testified that ap-

pellant took him about Tucson in his automobile "to spot houses to burglarize," but that they were not together when he commited the various burglaries in Tucson, including that of Mr. Donau's home. Since, therefore, appellant took no part in the actual commission of the offense of larceny, but subsequently received the property from Smith, he was subject to prosecution for the crime of receiving, provided he knew at the time he received it the property was stolen. *Leon* v. *State, supra.* "The offenses" (larceny and guilty receiving) says Wharton on Criminal Law, volume 2 (11th ed.), paragraph 1132, "are so distinct that one cannot be said to merge into the other, nor is conviction of the one in any way incompatible with conviction of the other. Hence, in defiance of such testimony, the defendant, if there be sufficient evidence of guilty receiving, may be convicted of such receiving."

This court having held in the Leon case that "a person who steals property and one who afterwards receives it from him, knowing it to have been stolen, are guilty of separate offenses, and, without more, neither is an accomplice of the other," it is unnecessary to discuss the sufficiency of the corroboration of Smith's testimony. While the authorities are not agreed as to whether the thief is an accomplice of the one who is guilty of the crime of receiving the stolen property, within the meaning of the statute providing that an accomplice's testimony must be corroborated, yet in the Leon case this court adopted the view that he is not as being "in accord with the best interests of the law-abiding public and the orderly administration of justice, and did not deprive the defendant of any legal rights," and nothing is presented in this case indicating that it should have taken the opposite view. This assignment cannot be sustained.

In its charge to the jury the court correctly defined the terms "willfully," "unlawfully," "knowingly," and "feloniously," as used in the information. The word "knowingly" meant, it was said, "that the defendant was apprised of the fact that the goods he is alleged to have received were stolen." But after this definition there followed this specific language:

"That is the explanation of those words. 'Knowingly' requires perhaps a little more explanation, and I might say it is not necessary that one see a crime to be charged with 'knowingly' receiving stolen goods. That is not the degree of knowledge that the law presumes or requires. You are instructed that the knowledge may be either actual or it may be knowledge which is imputed to the person receiving stolen goods. I mean by that that if the facts and circumstances are such as to impute knowledge it would be sufficient to sustain a conviction without any proof directly to the point that the defendant at the time he is alleged to have received the property was informed that it was stolen property. But the fact must be shown to your satisfaction beyond any reasonable doubt that when the defendant received the property, if he did receive it, it was in the possession of the thief who had stolen it from the owner, and that the defendant received it under such circumstances that a man of ordinary prudence and caution would be satisfied that it was stolen property."

Later on in the instruction the following language was used:

"The felonious intent—going back to that matter of intent—to warrant conviction, must have consisted of the defendant's intentional receipt of stolen property knowing the same to have been stolen, *as I have defined 'knowing,'* with further intent in the defendant in receiving the same to deprive the owner of said property."

"In order to convict the defendant of the crime of receiving stolen property, knowing it to have been

stolen, *knowledge, as knowledge has been defined to you,* that said property had been stolen must be established beyond a reasonable doubt.''

''In this connection also comes the question of the intentional receiving of said property, if the same was received by defendant, knowing the same to have been stolen, as the defendant must have intentionally received said property with guilty knowledge—that is, with knowledge that the same was stolen property, *or such knowledge as I have explained to you in another instruction,* to be guilty of the charge contained in the information—that of receiving stolen property knowing the same to have been stolen.'' (All italics ours.)

It is contended that these instructions are erroneous, because they authorize a conviction even though appellant may not have had guilty knowledge that the property was stolen. It will be observed that they do permit a verdict of guilty whether defendant's knowledge of the theft was actual or merely imputed. Under the statement that, if the facts under which the property was received by the accused were such that a man of ordinary prudence and caution would have been satisfied that it was stolen, the law imputed to the defendant knowledge of this fact, the jury's only duty on the question of guilty knowledge was to decide what an ordinarily prudent and cautious person would have done under the circumstances. This was equivalent to advising the jury that, if it concluded such a man would have been satisfied the property was stolen, the law would attribute the same knowledge to the accused. It relieved the jury from the necessity of considering whether the circumstances under which the defendant received the property were such as to cause him to realize individually it was stolen, and permitted his conviction upon the jury's determination of what an ordinarily prudent and cautious man would have done under the circumstances, without

taking cognizance of the fact that there was nothing to show whether the accused possessed the prudence and caution of the one by whose actions his were tested. The question for the jury was not whether the facts would have given the ordinary person knowledge of the theft, but whether they had such effect upon the defendant himself with his understanding of their significance. Many people are not as cautious and prudent as the ordinary person, hence the circumstances might have meant knowledge to him, and nothing to the accused.

Some courts, it is true, have held similar instructions good, but it would seem very clear that a test which makes one person criminally liable, because he is not as prudent and cautious as the ordinary person, may have the effect of permitting mere negligence or lack of caution to serve the purpose of a felonious intent and guilty knowledge. Such a test would perhaps be proper if the purpose were to establish a civil liability, but the weight of authority and, we believe, the better reasoning are against it in the prosecution of a criminal offense of which guilty knowledge is an essential element.

In Bishop on Criminal Law, volume 2 (9th ed.), paragraph 1137, this language appears:

"Receipt of these [stolen goods] under such circumstances as would satisfy a man of ordinary intelligence and caution that they were stolen is not sufficient."

In *State* v. *Denny*, 17 N. D. 519, 117 N. W. 869, we find this language:

"Appellant's counsel are correct in their contention that 'the standard by which to impute guilty knowledge is not that of a man of ordinary intelligence and caution, but the test is a personal test of the defendant.' This is in harmony with the principle announced by this court in *State* v. *Hazlett*, 16 N. D. 426, 113 N. W. 374. See, also, *Robin-*

27 Ariz.—4

*son* v. *State,* 84 Ind. 452. We think said instruction was clearly erroneous, for the further reason that it invaded the province of the jury. As stated by the Indiana court in the above case, 'guilty knowledge was purely a question of fact for the determination of the jury, and the court could not, as a matter of law, tell them what would be sufficient evidence of such guilty knowledge. The court had no right thus to invade the province of the jury.' "

In *State* v. *Ebbeller,* 283 Mo. 57, 222 S. W. 396, the Supreme Court of Missouri quotes with approval the following excerpt from *Kasle* v. *United States,* 233 Fed. 878, 147 C. C. A. 552.

"Plainly such tests as these of guilty knowledge on the part of the accused subjected him to a standard of conduct and of capacity to detect crime, which the jury might conclude to be the standard of reasonable and honest men of average intelligence, when acting under circumstances like those which might be found to have existed here. The effect of such tests was to charge the accused with guilty knowledge or not upon what the jury might find would have induced belief in the mind of a man such as they were told to consider, rather than the belief that was actually created in the mind of the accused; or, at last, the accused might be condemned even if his only fault consisted in being less cautious or suspicious than honest men of average intelligence are of the acts of others. The result of the rule of the charge would be to convict a man, not because guilty, but because stupid. The issue was whether the accused had knowledge, not whether some other person would have obtained knowledge, that the goods had been stolen. The circumstances must have had that effect upon the mind of the accused, to constitute knowledge in him. The issue must be determined upon the individual test of the accused. It may well be that the tests stated in the charge are proper enough to fix civil liability for the acts or omissions of a defendant, but hardly to fasten upon him an intent to commit a felony. There is some conflict in the decisions upon this sub-

ject, but we think the tests of the charge are opposed to the clear weight of authority.''

While it must appear that the receiver of the stolen property had knowledge that it was stolen at the time he received it, it is not required that he have that positive knowledge which comes only from personal observation of a fact, or from the direct statement of another. It may be inferred from other facts, and it is for the jury to decide whether the circumstances shown are such as to establish the ultimate fact that the accused knew the property was stolen.

In *Peterson* v. *United States*, 213 Fed. 920, 130 C. C. A. 398, the Circuit Court of Appeals used this language:

''It is doubtless true, as was said by the court, that it is not necessary to show knowledge by direct testimony, nor is it essential that the accused have actual or positive knowledge such as one acquires by personal observation of a fact. It is not required that he should see the thief taking the property, or that the thief should have told him he stole the property. Knowledge may be inferred from circumstances. Anything amounting to notice, whether such notice be direct or indirect, positive or inferential, will satisfy the statute. But, even so, the ultimate fact which the jury must find before a conviction is warranted is that the defendant had such knowledge, and knowledge is something more than a suspicion. Moreover, circumstances which would create a strong suspicion in the mind of one man might have little significance for another, and one is not to be convicted of a crime because he is of a less suspicious nature than the ordinary man, and where, therefore, he may have acted in entire good faith in the face of conditions which might have put another upon his guard.''

See, also, *Cohn* v. *People*, 197 Ill. 487, 64 N. E. 306; *State* v. *Rountree*, 80 S. C. 387, 22 L. R. A. (N. S.) 833, 61 S. E. 1072.

What effect this instruction had on the jury no one can say. Whether it believed Smith's statement entirely or accepted it only in so far as the occurrences at the time of the search and arrest tended to corroborate it, or whether it concluded, regardless of what he said, that any ordinarily prudent and cautious man would have known from the circumstances under which the property was received that it was stolen, is problematical. It was made very plain by the explanation of the term "knowledge" and the three subsequent references in the instructions to this explanation that it was authorized to pursue the course last mentioned. This we think was error.

This renders unnecessary a discussion of the assignment based upon the instruction defining "reasonable doubt."

The judgment is reversed and the cause remanded for a new trial.

ROSS and LYMAN, JJ., concur.