[Crim. No. 9559. Second Dist., Div. Three. Sept. 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH STEELE, Defendant and Appellant.

Burton Marks, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, J.—Defendant was charged with murder and assault with intent to commit murder. The acts charged took place on April 15, 1959. Defendant was not brought to trial until August 21, 1963, appointed psychiatrists having found him to be insane during most of the intervening period. Defendant pleaded not guilty and not guilty by reason of insanity. A jury found him guilty of first degree murder and of the assault, as charged. It also found that he was sane at the time of the offenses. Punishment for the murder was fixed at life imprisonment. Defendant appealed and we appointed counsel at his request.

Since all three court-appointed psychiatrists who testified on the issue of insanity said that defendant was insane at the time of the offenses charged, it is understandable that the entire thrust of defendant's argument is directed at the verdict finding him to have been sane. Both parties have devoted the major portion of their briefs to just one question: is this case governed by *In re Dennis*, 51 Cal.2d 666 [335 P.2d 657], where the Supreme Court found a finding of sanity to be unsupportable against uncontradicted evidence, or by *People* v. *Wolff*, 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959], where the court held that in spite of the apparent unanimity of the psychiatrists to the effect that the defendant was insane, the record nevertheless contained sufficient evidence to uphold the jury's verdict to the contrary?

As we see it we cannot reach this issue because at the trial on the issue of guilt the court committed so fundamental an error by restricting defendant's proof on the question of his specific mental state that we must reverse although the point is not raised in the briefs. (*Kurlan* v. *Columbia Broadcasting System*, 40 Cal.2d 799, 806 [256 P.2d 962]; *Philbrook* v. *Randall*, 195 Cal. 95, 105 [231 P. 739]; *Schubert* v. *Lowe*, 193 Cal. 291, 294 [223 P. 550]; *Estate of Fries*, 221 Cal.App.2d 725, 730 [34 Cal.Rptr. 749].)

To put the problem in its proper setting, very little needs to be said about the facts of the murder and the assault.

In brief, the murder victim was the former wife of the defendant, while the target of the assault was her former attorney, who had acted for her in the divorce case between defendant and decedent. The divorce had been obtained in 1954, but ever since then, until the time of the murder, defendant lived in the same apartment court as his former wife, though they never spoke.

Defendant became extremely dissatisfied with the division of property decreed in the divorce case. On several occasions he threatened to kill his former wife and the attorney. He also believed that there had been an illicit relationship between the wife and the attorney and that his youngest child was the result thereof. On April 15, 1959, defendant killed his wife by means of an instrument which could have been a hammer and assaulted the attorney with a claw hammer, causing multiple wounds to his head.

These are the bare bones of the prosecution's case on the issue of guilt. Since defendant does not question the sufficiency of the evidence to support the finding that he committed the acts in question, no elaboration is necessary.

Defendant offered no evidence to contradict the facts of the two crimes. On the issue of guilt his only witness was Doctor Von Hagen, a specialist in neurology and psychiatry since 1934, whose qualifications were not challenged by the prosecution and who had been appointed by the court to examine defendant in May of 1959, shortly after the commission of the offenses. In answer to a hypothetical question the doctor said that in his view defendant could form a deliberate intent to take the life of a human being and could premeditate and deliberate with respect to the wilful taking of another person's life. The doctor also testified that defendant was capable of having malice aforethought, basing his definition of that term on an instruction which was apparently before him, but not made part of the record. He also said that defendant was psychotic, but when asked as to the type of psychosis, the prosecutor objected as follows: ''Our concern at this stage of the proceedings, at least, is to whether or not he had the mental capacity to carry out the act complained of, that is, at least, at this phase under the issues joined by not guilty.''

There followed a lengthy discussion at the bench concerning what further psychiatric evidence, if any, was admissible on the issue of guilt. Defense counsel, to indicate to what he

expected Doctor Von Hagen to testify said: "Your Honor, this is what I have in mind. I have discussed the matter with the doctor and he is not going to in any way give his opinion as to whether he is sane or insane. . . . The Doctor has given his opinion as to premeditation and deliberation. Now, I wish to bring out what the doctor considers the foundation for his opinion on premeditation and deliberation in this way. The doctor says that the man can premeditate and deliberate *but that the reasoning for premeditating and deliberating is unsound, illogical, because he is a paranoid—delusional type.* Now it is my contention that under the law of premeditation, deliberation and aforethought, that in order to fulfill those requirements of first degree and second degree murder, *that one must have the mental capacity to reason soundly.* I am not talking about not guilty by reason of insanity. This has nothing to do with not guilty by reason of insanity. But one must have the mental capacity and mental facilities to reason soundly. . . . It is my contention that when the law says that one premeditates and deliberates that means one premeditates and deliberates soundly. It has nothing to do with insanity. I am talking about if a man falls short of not guilty by reason of insanity and he premeditates and deliberates with an unsound mind, he then—and has no malice—or has malice aforethought with an unsound mind, he falls within the category of manslaughter. . . . If a man premeditates and deliberates with an unsound mind, and assuming here that there is no issue of not guilty by reason of insanity, and that also that there is no plea of not guilty by reason of insanity in issue or pled, that *it is my contention that I may offer evidence as to, if you want to call it mental illness*—it doesn't make any difference what tag you put on it—that I can offer evidence of mental illness, that the man premeditated, deliberated, had malice aforethought but with an unsound mind, therefore does not fall within the category of the law. Submit it to you, sir."

The court's reply was: "I can't go along with that thinking. Everybody is presumed to be sane. That is the reason why they have this special plea of not guilty by reason of insanity. I will sustain the objection. . . ."

This, however, did not end the discussion. Seeking guidance from the court as to just how far he could go with the psychiatrist, defense counsel reargued his position, making it again quite clear that what he had in mind was to prove what

is sometimes called a *"Wells-Gorshen"* defense.[1] In other words, he proposed to prove that defendant, though perhaps not legally insane within the meaning of the M'Naughton rule, did nevertheless suffer from a mental disorder which would have negatived the specific mental state necessary for the crimes with which he was charged.[2]

The court reiterated its ruling, there was no cross-examination of Doctor Von Hagen, defense counsel excused the other psychiatrists and no further evidence was presented by either side on the issue of guilt.

Thereafter on the trial on the insanity plea defendant called the three court-appointed psychiatrists. For the purpose of this opinion it is sufficient to note that they were unanimous in finding defendant to have been insane at the time of the commission of the two offenses. We set forth brief summaries of their testimony in the footnote[3] merely to show

[1]*People* v. *Wells*, 33 Cal.2d 330 [202 P.2d 53]; *People* v. *Gorshen*, 51 Cal.2d 716 [336 P.2d 492].

[2]The Special Commission on Problems of Insanity Relating to Criminal Offenders-Substantive, appointed by the Governor pursuant to section 6027 of the Penal Code in its report dated July 7, 1962, suggested that the *Wells-Gorshen* rule be codified in the following terms: "Evidence that the defendant in a criminal proceeding had a mental disorder shall be admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is or may be an issue during the trial."

[3]*Doctor Gore.* Direct Examination: Specialist in psychiatry for 35 years. Regularly retained by the Psychiatric Court of the Los Angeles County Superior Court since 1959. Examined defendant May 28, 1959. Found that defendant was legally insane at the time. Was of the opinion that defendant did not have capacity to make judgments, that he was suffering from such a defect of reason and disease of mind as to render him incapable of distinguishing right or wrong. Defendant presented a clear picture of a chronic brain syndrome, that is to say, a deterioration of the brain as a result of hardening of the arteries. Examined defendant again shortly before the trial, with no change in his opinion and found that he did not have the capacity to form an intent to do anything and that if he formed such an intent, he would only carry it out because he had insufficient judgment function to prevent him from doing such an act. Cross-examination: A psychotic person, such as defendant, is mentally ill and incapable of forming a judgment and of doing or not doing things in conformity with the requirements of society. He had many things preying on his mind for months or years which gradually accumulated in his unconscious mind until there was an explosion, which obliterated the judgment function and made him do things which under normal conditions he would never do. During defendant's examination his train of talk was centered on the injuries done to him by his wife and her lawyer who had robbed him of his life's savings. A paranoidal delusional individual harbors a false belief, in which he thinks someone is plotting against him. There is usually some basis in fact for the belief, but apart from that basis it is a projection of his own mind. These delusions are adhered to regardless of any logic or evidence. One of defendant's delusions was that his wife first had an affair with her attorney and that the result was the natural consequence of that

what a wealth of evidence bearing on the issues of malice aforethought, deliberation and premeditation defendant was foreclosed from presenting on the issue of guilt.

The ruling of the court excluding psychiatric evidence on the issue of guilt was clearly erroneous. We take it that *People* v. *Wells, supra,* and *People* v. *Gorshen, supra,* mean just what they say, namely that whenever a specific mental state is an essential element of a crime, psychiatric testimony which can aid the trier of fact in determining whether or not the defendant did in fact act under the mental state in issue,

---

affair, when the two conspired to cheat him out of his money. One of the reasons why defendant was unable to control his actions when the explosion came was his physical condition, the changes in his brain which developed as a result of his arteriorsclerosis and his malnutrition. On April 15, 1959, defendant did not have sufficient capability to have malice aforethought, or to deliberate and premeditate. Redirect examination: The fact that defendant had made threats for years without carrying them out was indicative that on the day of the crimes alleged, there was a "sudden explosion" which he was unable to control because his sense of judgment was rendered inactive. If defendant acted under an irresistible impulse, it was not one where he remained conscious of the nature and wrongfulness of his act.

*Doctor Von Hagen.* Direct examination: Examined defendant May 23, 1959. Formed opinion that he was suffering from a paranoid delusional psychosis and probably had cerebral arteriosclerosis. Defendant was incapable of recognizing the nature and wrongfulness of his acts at the time of the alleged offenses and incapable of distinguishing right from wrong. Cross-examination: At the time of the murder defendant was incapable of realizing the wrongfulness of his act. When the doctor examined him defendant had a general loss of memory which was not feigned. On April 15, 1959, defendant's desire for vengeance caused by his delusion became irresistible. Redirect examination: What caused the impulse to be irresistible is a matter of conjecture. It may be a change in the electrical activity in the brain or the product of fatigue or distress. In any event, at the time defendant was incapable of appreciating the nature and wrongfulness of his act.

*Doctor Tutunjian.* Direct examination: Specialist in psychiatry since 1949, staff psychiatrist at Metropolitan State Hospital at the time of trial. Examined defendant twice before trial. He came to the conclusion that defendant was mentally ill, could not distinguish right from wrong in relation to the alleged criminal acts and did not have sufficient mental capacity to know and understand what he was doing. In his opinion defendant's mental disease was classified as "schizophrenic reaction, paranoid type." Defendant showed the signs and symptoms of a chronic brain syndrome. Cross-examination: In layman's language defendant was suffering from a persecution complex. This was caused by the delusion that his wife and her lawyer had been intimate, that his youngest child was the result of that intimacy and that they had cheated him out of his property. Defendant was legally insane at the time of the commission of the offense because his emotions took over and reason gave out. On April 15, 1959, "something snapped in his brain and his emotions got the best of him and reason flew out the window. He was not responsible for this sudden act of violence." He acted on an irresistible impulse, not merely an impulse which he failed to resist. Redirect examination: At the time he acted out this impulse he was suffering from a dissociation reaction or was in a fugue stage, such as in epilepsy.

is admissible. (See also *People* v. *Jones,* 42 Cal.2d 219 [266 P.2d 38].) Thus in *People* v. *Wells, supra,* the question was whether or not the defendant acted with malice aforethought when he attacked a prison guard. Since the prosecution was one under Penal Code, section 4500, deliberation and premeditation were irrelevant. Malice aforethought merely denotes purpose and design in contradistinction to accident and mischance. On that issue Wells offered evidence from one of the prison physicians to the effect that because he was suffering from an abnormal physical and mental condition, not amounting to insanity, he did not act with malice aforethought but under fear for his personal safety. Although recognizing that the alleged fear would not support a plea of self defense, because to a reasonable person it was not such as would justify defendant's acts, the Supreme Court held that the exclusion of the evidence was error because the fear, irrational but honest, would eliminate the element of malice aforethought from the offense.

■ As we see it *People* v. *Wells* definitely established that the presumption of sanity, on which the trial court's ruling herein specifically relied, does not preclude a defendant from offering evidence on his plea of ''not guilty'' that he did not commit the overt act with the specific mental state required for the crime with which he is charged. ''It thus appears that on the trial in its first stage, mental capacity to commit the crime, insofar as sanity, but sanity only, is concerned, is conclusively presumed but that the specific mental state (intent or motive) necessary to be proved as a fact in order to establish guilt of the particular crime is not presumed, either conclusively or otherwise. ■ Whenever a particular mental state, such as a specific intent, is by statute made an essential element of a crime, that specific state must be proved like any other fact. (*People* v. *Watson* (1899) 125 Cal. 342, 343 [57 P. 1071] ; *People* v. *Richardson* (1911) 161 Cal. 552, 558-559 [120 P. 20] ; *People* v. *Fewkes* (1931) 214 Cal. 142, 148 [4 P.2d 538] ; *People* v. *Kirk* (1928) 94 Cal.App. 378, 381 [271 P. 347].) ■ Since, however, the mental capacity to commit the crime—insofar as legal sanity is concerned—is conclusively presumed at the first section of the trial, it follows that the fundamental or general rule hereinabove stated must be deemed to be qualified to this extent: That evidence tending to show lack of mental capacity to commit the crime because of legal insanity is barred at that stage. This simply means that legal sanity is not in issue at the first stage of the

trial and that the evidence must be confined to that which is pertinent to issues then being litigated. The issues then being litigated, if the crime is one of the types under discussion, necessarily include the question of the existence or non-existence of the specific mental state essential to the crime charged." (*Ibid.*, p. 350.)

*People* v. *Gorshen, supra,* follows logically from the rule laid down in *People* v. *Wells.* Here the defendant committed a killing which, judging from the overt acts proved, appeared to be intentional, deliberate and premeditated. The defense offered testimony by a psychiatrist which, without going into detail, tended to show that defendant " 'did not have the mental state which is required for malice aforethought or premeditation or anything which implies intention, deliberation or premeditation.' " (*Ibid.*, p. 723.)

The Supreme Court's opinion leaves no doubt that the rule of *People* v. *Wells* is just as much applicable to the mental states not involved in *Wells,* that is to say premeditation and deliberation. "Dr. Diamond's testimony was properly received in accord with the holding of *People* v. *Wells* (1949) 33 Cal.2d 330, 346-357 [202 P.2d 53], that on the trial of the issues raised by a plea of not guilty to a charge of a crime which requires proof of a specific mental state, competent evidence that because of mental abnormality not amounting to legal insanity defendant did not possess the essential specific mental state is admissible." (*Ibid.*, p. 726.)

There is no need for us to elaborate further on the extensive discussions in *Wells* and *Gorshen,* which have provoked numerous articles on the subject. (Coshow, *Clarification of Homicide Laws in California From Recent Decisions,* 1 Hastings L.J. 32; Diamond, *Criminal Responsibility of the Mentally Ill,* 14 Stan.L.Rev. 59, 74; Dieden and Gasparich, *Psychiatric Evidence and Full Disclosure in the Criminal Trial,* 52 Cal.L.Rev. 543; Fox, *Physical Disorder, Consciousness and Criminal Inability,* 63 Colum.L.Rev. 645, 657; Louisell and Diamond, *Law and Psychiatry: Détente, Entente, or Concomitance?* 50 Cornell L.Qu. 217, 219; Louisell and Hazard, *Insanity as a Defense: The Bifurcated Trial,* 49 Cal.L.Rev. 805; Packer, *The Case For Revision of the Penal Code,* 13 Stan.L.Rev. 252, 253; Case Note, *Admissibility of Evidence of Partial Insanity,* 22 So.Cal.L.Rev. 471; Comment, *Admissibility of Subjective Abnormality to Disprove Criminal Mental States,* 12 Stan.L.Rev. 226; Case Note, *Defense of Partial Insanity,* 7 U.C.L.A. L.Rev. 143.) It should be pointed out, however, that even in *People*

v. *Wolff*, 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959], so much relied on by the Attorney General as providing a legal basis for the finding that Steele was sane, the Supreme Court reduced the degree of murder to second degree because Wolff was not capable of healthy, fully normal and mature deliberation or premeditation.

We have not summarized the psychiatric testimony for the purpose of indicating that it necessarily proved that defendant here did not entertain malice aforethought or act pursuant to the kind of premeditation or deliberation necessary for a conviction of first degree murder. The vice of the categorical refusal by the trial court to permit psychiatric evidence on the issue of guilt was that it foreclosed any critical examination on such evidence on the issues on which it was tendered, namely the lack of the necessary healthy, normal and mature mental state.

To forestall any difficulties at a retrial, we note that in *People* v. *Wells,* the Supreme Court said in a dictum that if proffered psychiatric evidence tends to show not merely that defendant did or did not entertain a particular specific intent or other essential mental state, but rather that because of legal insanity he *could* not entertain it, then the psychiatric evidence is inadmissible under the ''not guilty'' plea and is admissible only on the trial on the plea of not guilty by reason of insanity. (*People* v. *Wells, supra,* p. 351.) Surely, however, it is no answer to the refusal of the trial judge in the instant case to admit the evidence on the issue on which it was offered, that when it was eventually admitted on the insanity plea it then tended to show inability to entertain the required mental state. We are not prepared to say, as a matter of law, that psychiatric testimony which on its face tends to show an inability to form malice aforethought, deliberation and premeditation may not, in actual fact, particularly when subjected to cross-examination and viewed in the light of known external facts, persuade a particular jury that while a defendant was able to entertain the necessary mental state, he did not do so on a particular occasion. After all, this was precisely the effect of the psychiatric testimony in *People* v. *Wolff, supra,* where, as noted, the Supreme Court upheld the finding of sanity but reduced the degree of the offense. It is thus apparent that the question whether psychiatric testimony tends to prove that the defendant did not entertain the mental state involved, as distinguished from whether he could not entertain it, cannot in the light of *People* v. *Wolff* always

present a question of admissibility which the trial court can decide when the testimony is first offered. ▮ The result of *Wolff* makes it abundantly clear that the same testimony may be highly relevant on the issue of the essential mental state as well as on the issue of insanity. In *Wolff* it was not only relevant, but persuasive.

In reversing, we are aware of the fact that the trial judge may have been misled by the manner in which Doctor Von Hagen's testimony came in. He appeared to have stated rather categorically that Steele was capable of malice aforethought, deliberation and premeditation. Superficially this may have appeared to preclude further psychiatric evidence on the issue of guilt. Yet, as the argument on the People's objection unfolded, it became obvious that defendant decided to offer evidence to qualify these apparently unqualified answers by showing the sick, abnormal and unhealthy nature of his mental state. He should have been permitted to do so.

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied October 14, 1965, and respondent's petition for a hearing by the Supreme Court was denied November 16, 1965.