Opinion
DOWDS, J.
Defendant, charged with a violation of Penal Code section 487, subdivision 1, grand theft, appeals his conviction after a jury trial of petty theft, a lesser but necessarily included offense. His contention on appeal is that the jury was improperly instructed. The only facts *Supp. 3 set forth in the recprd on appeal are that defendant was charged with stealing four wooden beams from a construction site and that the state of the evidence was such that the jury could have found that the defendant believed either (1) that the beams had been abandoned as worthless and the owner had no objection to his taking them or (2) that they had substantial value, had not been abandoned and he had no right to take them.
The court refused two jury instructions proposed by defendant reading as follows:

Defendant’s A

“If one takes personal property with the good faith belief that the property has been abandoned or discarded by the true owner, he is not guilty of theft. This is the case even if such good faith belief is unreasonable. The prosecutor must prove beyond a reasonable doubt that the defendant did not so believe for you to convict a defendant of theft.”

Defendant’s B

“If one takes personal property with the good faith belief that he has permission to take the property, he is not guilty of theft. This is the case even if such good faith belief is unreasonable.
The prosecutor must prove beyond a reasonable doubt that the defendant did not so believe for you to convict a defendant of theft.”
Instead, the court instructed the jury in the words of the following modified instructions:

Modified-Defendant’s A

“If one takes personal property in the reasonable and good faith belief that the property has been abandoned or discarded by the true owner, he is not guilty of theft.”

Modified-Defendant’s B

“If one takes personal property in the reasonable and good faith belief that he has the consent or permission of the owner to take the property, he is not guilty of theft.
*Supp. 4 “If you have a reasonable doubt that the defendant had the required criminal intent as specified in these instructions, the defendant is entitled to an acquittal.”
Accordingly, the question for determination on appeal is whether the defendant should be acquitted if there is a reasonable doubt that he had a good faith belief that the property had been abandoned or that he had the permission of the owner to take the property or whether that belief must be a reasonable one as well as being held in good faith.
A recent decision by the California Supreme Court throws light on this question. In People v. Wetmore (1978) 22 Cal.3d 318 [149 Cal.Rptr. 265, 583 P.2d 1308], defendant was charged with burglary, like theft a specific intent crime.[1] The Supreme Court held that the trial court had erroneously refused to consider at the guilt phase of the trial evidence that, because of mental illness, defendant was incapable of forming the specific intent required for conviction of the crime, instead of receiving such evidence only in respect of his plea of not guilty by reason of insanity. The court disapproved dictum in People v. Wells (1949) 33 Cal.2d 330 [202 P.2d 53] that if psychiatric reports described a defendant’s insanity as well as his diminished capacity, the evidence was inadmissible to prove his lack of specific intent, stating, at pages 323-324: “In holding that defendant’s psychiatric evidence could not be utilized to prove that he lacked the specific intent required for the offense of burglary, the trial court followed a dictum laid down in our decision in People v. Wells, supra, 33 Cal.2d 330. Wells, the seminal decision which established the doctrine of diminished capacity in California law, held that ‘evidence of diminished mental capacity, whether caused by intoxication, trauma, or disease, can be used to show that a defendant did not have a specific mental state essential to an offense.’ (People v. Conley (1966) 64 Cal.2d 310, 316 [49 Cal.Rptr. 815, 411 P.2d 911].) In dictum, however, Wells stated that since sanity is conclusively presumed at the guilt trial, ‘evidence tending to show lack of mental capacity to commit the crime because of legal insanity is barred at that stage.’ (33 Cal.2d 330, 350.) The Wells opinion later restated that conclusion in different terms: ‘[I]f the proffered evidence tends to show not merely that he [defendant] did or did not, but rather that because of legal insanity he could not, entertain the specific intent *Supp. 5 or other essential mental state, then that evidence is inadmissible under the not guilty plea....’ (P. 351.)
“As we shall explain, the Wells dictum imposes an illogical and unworkable rule which has not been followed in subsequent cases. Wells spoke of excluding evidence which tended to prove ‘lack of mental capacity. ..because of legal insanity.’ (P. 350.) Mental incapacity does not occur ‘because of legal insanity;’ instead both insanity and diminished capacity are legal conclusions derived from evidence of defendant’s mental condition. (See Comment (1971) 18 UCLA L.Rev. 561, 563-564, fn. 11.) Consequently, if the evidence of a defendant’s mental illness indicates that the defendant lacked the specific intent to commit the charged crime such evidence cannot reasonably be ignored at the guilt trial merely because it might (but might not) also persuade the trier of fact that the defendant is insane.
“Wells' distinction between evidence that defendant did not entertain the requisite intent, which is admissible, and evidence that he could not entertain that intent, which is inadmissible, cannot be supported. ‘[A]s a matter of logic, any proof tending to show that a certain mental condition could not exist is relevant and should be admissible to show that it did not exist. And, of course, proof that something could not exist is the best possible evidence that it did not exist.’ (Louisell & Hazard, Insanity as a Defense: The Bifurcated Trial (1961) 49 Cal.L.Rev. 805, 819.) Moreover, as Justice Kaus pointed out in People v. Steele (1965) 237 Cal.App.2d 182, 190-191 [46 Cal.Rptr. 704], evidence which tends to prove that a defendant could not entertain a certain intent may, when subject to cross-examination, convince the trier of fact that defendant was able to entertain the intent but did not do so on the occasion of the crime. Thus, Steele concludes, the trial court cannot refuse to admit such evidence when offered to prove diminished capacity.”
The court concluded, at page 327: “We therefore hold that evidence of diminished capacity is admissible at the guilt phase whether or not that evidence may also be probative of insanity. The trial court erred when, relying on the Wells dictum, it refused to consider evidence of diminished capacity in determining defendant’s guilt.”
The instant case, does not, of course, involve evidence of mental illness. Evidence was presented, however, from which the jury could have concluded that defendant believed that the wooden beams had been abandoned and that the owner had no objection to his taking them, i.e., *Supp. 6 that he lacked the specific criminal intent required to commit the crime of theft (intent permanently to deprive an owner of his property). A similar situation existed in People v. Photo (1941) 45 Cal.App.2d 345 [114 P.2d 71], where defendant’s conviction of grand theft for the taking of certain boxes of oranges which he thought he had purchased was reversed, the Court of Appeal stating at page 353: “Felonious intent is an essence of the crime of larceny. The general rule stated in 36 C. J., section 105, page 764, is: ‘If one, in good faith, takes the property of another, believing it to be legally his own, or that he has a legal right to its possession, he is not guilty of larceny, although his claim is based on a misconception of the law or of his rights under it, for although ignorance of law and honest intentions cannot shield a man from civil liability for a trespass committed by him, yet they do protect him from criminal liability, by divesting the act of the felonious intent without which it cannot be a crime. It is necessary, however, in all cases that the claim of right to be a bona fide one, and not a mere cover for a felonious taking, and must be something more than a vague impression; it must amount to an honest conviction. Knowledge of the existence of an adverse claim by another person does not negative the existence of good faith.’
“From the evidence it appears that Photo apparently took the fruit, under a claim of title in himself, and if done in good faith after receiving what he thought was legal advice though it might have been erroneous, a presumption arose in his favor that the taking lacked the elements necessary to constitute larceny.”
Earlier California cases are to the same effect. In People v. Devine (1892) 95 Cal. 227 [30 P. 378], defendant’s conviction of larceny was reversed. He had driven away in a wagon, without any attempt at secrecy, a number of hogs, his own and three bearing another’s mark or brand. The Supreme Court pointed out: “There are cases in which all the knowledge which a person might have acquired by due diligence is to be imputed to him. But. where a felonious intent must be proven, it can be done only by proving what the accused knew. One cannot intend to steal property which he believes to be his own. He may be careless, and omit to make an effort to ascertain that the property which he thinks his own belongs to another; but so long as he believes it to be his own, he cannot feloniously steal it.... ” (Id. at pp. 230-231.)
In re Bayles (1920) 47 Cal.App. 517 [190 P. 1034] concerned the owner and manager of an apartment house who was convicted of lar *Supp. 7 ceny based on evidence that she had seized a sewing machine and victrola of" a former tenant under claim of lien to secure certain charges allegedly owed by the tenant. The Court of Appeal declined to decide such fine points relating to the validity of the claim of lien as whether the tenant had left the apartment sufficiently clean, stating at pages 520-521: “[E]ven though the standard of cleanliness exacted by the petitioner should be found by the jury to be an unreasonable standard,' and not the standard contemplated by the agreement between the parties, yet, we think petitioner would not be guilty of grand larceny. The record discloses no evil or felonious intent upon the part of the petitioner; she was merely seeking to enforce her civil rights as she believed them to exist. Larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another. (Sec. 484, Pen. Code.) Every taking by one person of the personal property of another, without his consent, is not larceny. Felonious intent is of the essence of the crime of larceny. (People v. Devine, 95 Cal. 227, [30 Pac. 378].) If a jury should determine that the apartment was clean, according to the standard contemplated by the parties at the time they made their agreement, at the time petitioner took possession of the goods, and that, therefore, no money was due petitioner for cleaning the same, Mr. Tucker could be amply compensated in damages for the wrongful detention of his property. (Sec. 667, Code Civ. Proc., and sec. 3336, Civ. Code.) But this question must be tried out in a civil action, and not in a criminal proceeding. (Sec. 3379, Civ. Code; sec. 3380, Civ. Code; secs. 870, 509, 510, 511 and 512, Code Civ. Proc.)”
Defendant was discharged from custody pursuant to a writ of habeas corpus.
Cases in other jurisdictions also hold that where the law requires a specific criminal intent, it is not enough merely to prove that a reasonable man would have had that intent, without meeting the burden of proof that the defendant himself also entertained it. For example, in State v. Ebbeller (1920) 283 Mo. 57. [222 S.W. 396], a conviction of knowingly receiving a stolen automobile was reversed because the court gave the following erroneous jury instruction: “‘Éy the term “knowing” that the property was stolen is not meant absolute personal and certain knowledge on the part of the defendant that the property mentioned in the indictment had been stolen, but such knowledge and information in his possession at the time he received the same, if you believe he did receive it, as would put a reasonably prudent man, exercising ordinary caution, on his guard, and would cause such a man exercising such cau *Supp. 8 tion, and under circumstances which you believe defendant received the property, to believe and be satisfied that the property had been stolen.’” (222 S.W. at p. 397.)
In reversing, the court pointed out the error in the instruction as follows: “It will be noticed that the instruction does permit a conviction if the facts were such as (in the opinion of the jury) would have caused a reasonably prudent person, exercising ordinary caution, to have believed that the property had been stolen at the time received.
“We are inclined to the view ... that the learned attorney representing the appellant is correct in stating that—“‘The question is not what some other person would have believed and known from the circumstances attending the receipt of the property, but what did this defendant believe and know.’” (Id.)
Similarly, in Kasle v. United States (6th Cir. 1916) 233 Fed. 878 a conviction of receiving stolen goods was reversed because of error in jury instructions which the appellate court read as informing the jury that the defendant could be convicted if a reasonable and honest man of average intelligence would have known the goods were stolen under the facts existing at the time, the court stating: “The effect of such tests was to charge the accused with guilty knowledge or not upon what the jury might find would have induced belief in the mind of a man such as they were told to consider, rather than the belief that was actually created in the mind of the accused; or, at last, the accused might be condemned even if his only fault consisted in being less cautious or suspicious than honest men of average intelligence are of the acts of others. The result of the rule of the charge would be to convict a man, not because guilty, but because stupid. The issue was whether the accused had knowledge—not whether some other person would have obtained knowledge—that the goods had been stolen.” (Id. at p. 887)
In State v. Aschenbrenner (1943) 171 Ore. 664 [138 P.2d 911] the following instruction in a larceny case was held to be erroneous: “You are instructed that in order to convict the defendants of the crime charged, it is necessary for the state to prove beyond a reasonable doubt that the defendants had knowledge, or notice of such facts and circumstances as would have convinced a reasonable man of ordinary intelligence and observation, that estray sheep were in the Aschenbrenner flock, and if upon the whole evidence in this case you have a reasonable doubt that the facts and circumstances known to the defen *Supp. 9 dants (if you find any were known to them), were such that a reasonable man of ordinary intelligence and observation would have known that estray sheep were in the Aschenbrenner flock, then you should find the defendants not guilty of the crime charged.
“On the other hand, if you find from the evidence beyond a reasonable doubt that the circumstances were such as to lead a rational man, a man of ordinary intelligence and observation, to know that estray sheep were in the Aschenbrenner flock, such circumstances would be sufficient to justify you in finding that the defendants knew estray sheep were in the Aschenbrenner flock.” (171 Ore. at pp. 668-669.) The Supreme Court of Oregon said: “We are of the opinion that the circuit court erred in instructing the jury that circumstances which would lead a man of ordinary intelligence and observation to know that estray sheep were in the Aschenbrenner flock ‘would be sufficient to justify’ it ‘in finding that the defendants knew’ that fact. It seldom happens that direct evidence can be produced that the accused had actual knowledge of a fact. And in the absence of direct evidence knowledge may be inferred from circumstances. The issue, however, was whether the defendants had knowledge that estray sheep were in the flock, not whether some other person would or could have obtained that knowledge under the circumstances disclosed by the evidence. It might have appeared to the jury that the defendants, or some of them, did not possess the intelligence or observation of an ordinary man, or that in a given instance they, or some of them, acted unwisely, unreasonably, imprudently or carelessly, but not with criminal intent. The instruction complained of was not only erroneous, but highly prejudicial to the defendants’ rights.” (Id. at p. 674) The Supreme Court of Arizona, in Reser v. State (1924) 27 Ariz. 43 [229 P. 936] held erroneous a jury instruction in a receiving stolen property case setting forth a test of whether the defendant received the property “under such circumstances that a man of ordinary prudence and caution would be satisfied that it was stolen property,” the court stating: “It is contended that these instructions are erroneous, because they authorize a conviction even though appellant may not have had guilty knowledge that the property was stolen. It will be observed that they do permit a verdict of guilty whether defendant’s knowledge of the theft was actual or merely imputed. Under the statement that, if the facts under which the property was received by the accused were such that a man of ordinary prudence and caution would have been satisfied that it was stolen, the law imputed to the defendant knowledge of this fact, the jury’s only duty on the question of guilty knowledge was to decide what an ordinarily pru *Supp. 10 dent and cautious person would have done under the circumstances. This was equivalent to advising the jury that, if it concluded such a man would have been satisfied the property was stolen, the law would attribute the same knowledge to the accused. It relieved the jury from the necessity of considering whether the circumstances under which the defendant received the property were such as to cause him to realize individually it was stolen, and permitted his conviction upon the jury’s determination of what an ordinarily prudent and cautious man would have done under the circumstances, without taking cognizance of the fact that there was nothing to show whether the accused possessed the prudence and caution of the one by whose actions his were tested. The question for the jury was not whether the facts would have given the ordinary person knowledge of the theft, but whether they had such effect upon the defendant himself with his understanding of their significance. Many people are not as cautious and prudent as the ordinary person, hence the circumstances might have meant knowledge to him, and nothing to the accused.” (229 P. at p. 937.) Other cases from other jurisdictions setting forth the same rule could be cited and we appreciate that other cases can be found in which its application is not so clear, The proper rule, it seems to us, is set forth in Perkins on Criminal Law (2d ed. 1969) at pages 940-941: “If no specific intent or other special mental element is required for guilt of the offense charged, a mistake of fact will not be recognized as an excuse unless it was based upon reasonable grounds... .[On the other hand, bjecause of the requirement of a specific intent to steal there is no such thing as larceny by negligence. One does not commit this offense by carrying away the chattel of another in the mistaken belief that it is his own, no matter how great may have been the fault leading to this belief, if the belief itself is genuine.”
La Fave and Scott, Handbook on Criminal Law (1972) sets forth at page 357 what the authors call the “. . .rather simple rule that an honest mistake of fact or law is a defense when it negates a required mental element of the crime . . . . ” As an example they refer to the crime of receiving stolen property, stating “... if the defendant by a mistake of either fact or law did not know the goods were stolen, even though the circumstances would have led a prudent man to believe they were stolen, he does not have the required mental state and thus may not be convicted of the crime.”
In the instant case the trial court in effect instructed the jury that even though defendant in good faith believed he had the right to *Supp. 11 take the beams, and thus lacked the specific intent required for the crime of theft, he should be convicted unless such belief was reasonable. In doing so it erred.[2] It is true that if the jury thought the defendant’s belief to be unreasonable, it might infer that he did not in good faith hold such belief. If, however, it concluded that defendant in good faith believed that he had the right to take the beams, even though such belief was unreasonable as measured by the objective standard of a hypothetical reasonable man, defendant was entitled to an acquittal since the specific intent required to be proved as an element of the offense had not been established.[3]
The People’s reliance on People v. Mayberry (1975) 15 Cal.3d 143 [125 Cal.Rptr. 745, 542 P.2d 1337] is misplaced. The discussion in that case involved the propriety of an instruction on mistake of fact in respect of charges of rape and kidnaping, general intent crimes, a different question from that here presented.
The judgment is reversed.
Cole, P. J., and Saeta, J., concurred.

Wetmore had occupied an apartment in the owner’s absence and used or destroyed some of the contents, allegedly in the good faith but unreasonable belief, induced by mental illness, that he owned the apartment and its contents.

The portion of the court's instruction reading “If you have a reasonable doubt that the defendant had the required criminal intent..., the defendant is entitled to an acquittal" is, however, correct.

Instruction No. 4.35 in the fourth edition of California Jury Instructions—Criminal, relating to ignorance or mistake of fact, reads as follows: “An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not a crime.
“Thus a person is not guilty of a crime if he commits an act or omits to act under an honest and reasonable belief in the existence of certain facts and circumstances which, if true, would make such act or omission lawful.” The use note for this instruction omits the caveat found under instruction No. 4.36, relating to ignorance or mistake of law, to the effect that the instruction would be inappropriate if the mistake may negative a specific intent or other mental state which the crime requires. We think trial judges would be well advised also to eschew or modify instruciton No. 4.35 in cases involving crimes requiring a specific intent or mental state.