Filed 1/10/14  P. v. Larson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062779 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. SCD240603, SCD237715, SCD233044) |
| SCHA BULIL LARSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

Scha Bulil Larson appeals a judgment in San Diego County Superior Court case No. SCD240603 following his jury conviction of one count of attempted theft of a

vehicle (Veh. Code, § 10851, subd. (a)) and one count of battery (Pen. Code, § 242).[1]

On appeal, he contends: (1) the evidence is insufficient to support his conviction of attempted vehicle theft; (2) the trial court erred in instructing on the defense of mistake of fact; (3) the trial court erred by not instructing sua sponte on the defense of claim of right; and (4) the trial court abused its discretion in imposing restitution and parole revocation fines and ordering victim restitution. For the reasons discussed below, we affirm the judgment. Larson also appeals the judgment to the extent it dealt with two related cases (San Diego County Superior Court case Nos. SCD233044 & SCD237715). However, he does not present any contentions or substantive analysis showing why the court's judgment in those cases should be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

*Case No. SCD240603.* On April 28, 2012, Angelica Fonseca (Angelica) drove to Pacific Beach to the second-hand store she owns with her husband, Felipe Fonseca (Felipe). At about 9:30 a.m., she parked her gray or silver Kia Sportage in a marked space in the parking lot behind the store. She left the car's windows up, but the doors unlocked. She took the car keys with her, but left her house keys in the car's center console between the front seats.

At about 1:00 p.m., Mark Hoefer, who owned a restaurant next door, looked out his back door and saw Larson walk into the parking lot. The parking lot is surrounded by buildings and is accessible only by means of a narrow driveway between two of the

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

buildings. Larson was shirtless, wearing jeans, and carrying some folders with papers in them. Larson dropped the folders and the papers fell out of them. When Hoefer asked him whether the papers were his, he (Larson), in a sharp and irritated tone, answered, "Yes, they are mine." As Larson reached down to pick up the papers, Hoefer saw the right side of Larson's torso was scraped and bleeding. Hoefer then went back inside his restaurant. He looked out the back window of the restaurant and saw Larson walk behind four parked cars, make a pillow out of the papers, and lie down. At about 3:00 p.m., Hoefer walked out to the parking lot and saw Larson sleeping.

Later that afternoon, a woman told Hoefer there was a person in the parking lot. Hoefer went to the parking lot and told Larson he needed to leave. Belligerently, Larson asked Hoefer whether he was going to make him leave. Hoefer replied he would not, but someone else might. Hoefer asked Larson to go and then went back inside his restaurant. Hoefer looked outside, saw Larson standing up, and assumed he was leaving.

In the early evening, Raquel Gil, one of the Fonsecas' employees, went to the parking lot to get some merchandise from Angelica's car. Gil opened the car's passenger door and saw Larson sitting in its driver's seat. Frightened, Gil went back inside and told Angelica. Angelica and Gil went outside to investigate. As they approached the driver's side door, Larson got out of the car in an aggressive manner. Angelica asked him what was going on. When Larson approached them, Angelica and Gil ran back inside the store. Angelica told Felipe that someone was trying to steal their car.

Felipe went outside and approached Larson, who was standing next to the open driver's side door. They conversed for a few seconds and then Larson punched Felipe in

3

the mouth. As Felipe tried to take Larson to the ground, the car rolled backward about 10 to 15 feet. After the car stopped, Felipe was able to get Larson on the ground. With the assistance of another man, Felipe was able to keep Larson on the ground until police arrived about five to 10 minutes later.

Angelica went outside to look at her car. The car was about 10 feet away from where she had parked it that morning. One of her house keys was in the car's ignition. After the police pulled the house key out of the ignition, Angelica and Felipe saw the key was bent. Felipe saw the ignition had been damaged by the key jammed into it. Felipe had to realign the ignition with a screwdriver so the car key would fit in it. Felipe believed the car rolled backward because Larson had "jammed the console," presumably the gear shift. Thereafter, unless Felipe was careful, the gear shift would not stay in the "park" position.

At about 7:20 p.m., San Diego Police Officer David Bucsit arrived at the scene and helped arrest Larson. Larson appeared to have been drinking alcohol, but he was not unconscious or delusional.

An information charged Larson with one count of attempted theft of a vehicle (§ 664, Veh. Code, § 10851, subd. (a)), one count of attempted carjacking (§§ 664, 215, subd. (a)), and one count of battery (§ 242). The information also alleged Larson had served two prior prison terms (§§ 667.5, subd. (b), 668) and had one prior "strike" conviction (§§ 667, subds. (b)-(i), 668, 1170.12).

4

At trial, the prosecution presented evidence substantially as described above. In his defense, Larson presented the testimony of San Diego Police Officer Eric Miller, Bucsit's partner, who stated he believed Larson was intoxicated at the time of his arrest.

Larson testified in his defense, stating he vaguely remembered the events of the evening of April 28, 2012. The first thing he remembered was waking up in the passenger seat of a car he thought belonged to his girlfriend. Sitting in the driver's seat, he tried to start the car, but it would not start. He remembered being outside the car and having a couple of conversations with people. He remembered Felipe was very angry and asked him about the car. Larson told Felipe, "That's my girlfriend's car. That's my car." He tried to walk away, but Felipe would not let him. Felipe grabbed him and then he hit Felipe. The next thing Larson remembered was being held down on the ground by Felipe, who had him in a chokehold. He also remembered lying down in the back of a police car and getting booked in jail. On cross-examination, Larson testified his girlfriend's car was a black Jeep. He could not remember the last time he drove her car.

The jury found Larson guilty of attempted theft of a vehicle and battery, and not guilty of attempted carjacking. Larson admitted the strike and prior conviction allegations. The trial court sentenced Larson to the upper term of 18 months for the attempted theft of a vehicle, doubled that term to three years pursuant to the three strikes law, and imposed two consecutive one-year terms for his prior prison convictions, for a total prison term of five years. It sentenced him to 180 days in local custody for the battery offense with credit for time served. The court imposed a $2,400 restitution fine

5

(§ 1202.4, subd. (b)), a $2,400 parole revocation fine (§ 1202.45), stayed unless parole was revoked, and victim restitution of $6,650 (§ 1202.4, subd. (f)).

*Case No. SCD233044.* At the same sentencing hearing, the trial court sentenced Larson to the upper term of four years for his July 13, 2011, conviction on one count of assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)), and a concurrent four-year term for his July 13, 2011, conviction on a second count of assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(1)).

*Case No. SCD237715.* At the same sentencing hearing, the trial court also sentenced Larson to three years in prison for his February 2, 2012, conviction of felony vandalism (§ 594, subds. (a), (b)(1)).

On October 2, 2012, Larson timely filed a notice of appeal challenging his convictions in case No. SCD240603. On October 15, 2012, he timely filed a second notice of appeal challenging his convictions in case Nos. SCD233044 and SCD237715.

DISCUSSION

I

*Substantial Evidence to Support Larson's Conviction*
*of Attempted Theft of a Vehicle*

Larson contends the evidence is insufficient to support his conviction of attempted theft of a vehicle (Veh. Code, § 10851, subd. (a)). He asserts the evidence is insufficient to show he had the specific intent required to commit the offense.

A

The due process clauses of the federal and state Constitutions prohibit a criminal conviction unless a defendant's guilt is proven beyond a reasonable doubt by substantial

6

evidence. (*Jackson v. Virginia* (1979) 443 U.S. 307, 316-318; *People v. Johnson* (1980) 26 Cal.3d 557, 576-577; *People v. Berryman* (1993) 6 Cal.4th 1048, 1083, overruled on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) On appeal, the court must determine whether substantial evidence supports the conclusion of the trier of fact and not whether the evidence proves the defendant's guilt beyond a reasonable doubt. (*Johnson*, at p. 576; *People v. Reilly* (1970) 3 Cal.3d 421, 425.) "The [substantial evidence] standard of review is well settled: On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible and of solid value-- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] ' "[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder." ' " (*People v. Snow* (2003) 30 Cal.4th 43, 66.)

B

Section 664 provides: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in its perpetration, shall be punished . . . ." "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Accordingly, "[w]hen a defendant acts with the requisite specific intent, that is, with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime [citation], and performs an act that 'go[es] beyond mere preparation . . . and . . . show[s] that the perpetrator is putting his or her plan into action' [citation], the defendant may be

7

convicted of criminal attempt."  (*People v. Toledo* (2001) 26 Cal.4th 221, 230, fn. omitted.)  Intent may be inferred from the act and its surrounding circumstances.  (*People v. Edwards* (1992) 8 Cal.App.4th 1092, 1099.)  To commit an attempted offense, a defendant need not commit an element of the underlying crime, but only needs to have the specific intent to commit the underlying crime and have performed a direct or overt act toward its commission.  (§ 21a; *Toledo*, at p. 230; *People v. Medina* (2007) 41 Cal.4th 685, 694; *People v. Jones* (1999) 75 Cal.App.4th 616, 627.)

Vehicle Code section 10851, subdivision (a), defines the underlying crime of unlawfully taking or driving a vehicle as follows:

> "Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle, or any person who is a party or an accessory to or an accomplice in the driving or unauthorized taking or stealing, is guilty of a public offense . . . ."

The elements of that underlying crime are: (1) the driving or taking of a vehicle belonging to another person; (2) without the owner's consent; and (3) with the specific intent to permanently or temporarily deprive the owner of title or possession.  (Veh. Code, § 10851, subd. (a); *People v. Green* (1995) 34 Cal.App.4th 165, 180; *People v. Windham* (1987) 194 Cal.App.3d 1580, 1590.)  The specific intent to deprive the owner of possession of his or her car may be inferred from all the facts and circumstances of the case.  (*Green*, at p. 181; *People v. Clifton* (1985) 171 Cal.App.3d 195, 200.)

8

C

Based on our review of the entire record in this case, we conclude there is substantial evidence to support Larson's conviction of attempted theft of a vehicle (§ 664; Veh. Code, § 10851, subd. (a)). Larson's specific intent to deprive the Fonsecas of possession of their car can reasonably be inferred from the facts and circumstances of this case. Larson entered their car, picked up the house keys in the center console, jammed a house key into the car's ignition, and apparently tried to move the car by forcing its gear shift out of the "park" position. When Felipe intervened, Larson punched him in the mouth. Neither Angelica nor Felipe gave Larson permission to take or drive their car. Based on these facts and circumstances, the jury could reasonably infer Larson had the specific intent to commit the offense of unlawfully taking or driving the Fonsecas' car. (Cf. *People v. Green*, *supra*, 34 Cal.App.4th at p. 181 [tampered ignition, along with other evidence, supported finding of specific intent to deprive owner of possession of car]; *People v. Windham*, *supra*, 194 Cal.App.3d at pp. 1590-1591.)

The same acts discussed above also support the jury's finding that Larson took a direct, but ineffectual, action to commit the crime of theft of a vehicle (Veh. Code, § 10851, subd. (a)). Larson entered the Fonsecas' car, took a house key from the center console, jammed that key into the car's ignition, and forced the gear shift out of the "park" position. The jury could reasonably infer he took those direct, but ineffectual, actions to unlawfully take or drive the Fonsecas' car. The jury could further infer the only reason Larson's acts were ineffectual in committing that offense was that he used the Fonsecas' house key, instead of the car key, in his attempt to start the car and take or

9

drive it away. We conclude there is substantial evidence to support Larson's conviction of attempted theft of a vehicle (§ 664; Veh. Code, § 10851, subd. (a)). To the extent Larson cites evidence or inferences that would have supported a contrary finding by the jury, he misconstrues and/or misapplies the substantial evidence standard of review. (*People v. Snow*, *supra*, 30 Cal.4th at p. 66.) Furthermore, contrary to Larson's apparent assertion, he need not have actually committed the underlying crime of unlawfully taking or driving the Fonsecas' car to commit the offense of *attempted* theft of a vehicle. (§ 21a; *People v. Toledo*, *supra*, 26 Cal.4th at p. 230; *People v. Medina*, *supra*, 41 Cal.4th at p. 694; *People v. Jones*, *supra*, 75 Cal.App.4th at p. 627.)

II

*Instruction on Mistake-of-Fact Defense*

Larson contends the trial court erred in instructing on the defense of mistake of fact because it included the requirement that his mistaken belief be a reasonable belief.

A

Larson requested an instruction on the defense of mistake of fact, arguing there was evidence showing he thought the car he attempted to start belonged to his girlfriend. Per that request, the trial court instructed with a modified version of CALCRIM No. 3406 on the mistake-of-fact defense, as follows:

> "The defendant is not guilty of attempted vehicle theft as charged in Count 1 or attempted carjacking as charged in Count 2 if he did not have the intent or mental state required to commit the crime because he reasonably did not know a fact or reasonably and mistakenly believed a fact.
>
> "If the defendant's conduct would have been lawful under the facts as he *reasonably* believed them to be, he did not commit attempted

10

vehicle theft as charged in Count 1 or attempted carjacking as charged in Count 2.

"If you find that the defendant believed that the Kia Sportage was his vehicle and if you find that belief was *reasonable*, he did not have the specific intent or mental state required for attempted vehicle theft or attempted carjacking.

"If you have a reasonable doubt about whether the defendant had the specific intent required for attempted vehicle theft and attempted carjacking, you must find him not guilty of those crimes." (Italics added.)

B

In general, a mistake of fact is a defense to a charged offense if the mistaken belief was in good faith and reasonable. (*People v. Lucero* (1988) 203 Cal.App.3d 1011, 1016-1017.) However, if evidence of a mistake of fact is presented to negate a specific intent element of an offense, the defense of mistake of fact requires only that the mistake be in good faith and not that the belief be reasonable. (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1426-1427 (*Russell*); *People v. Navarro* (1979) 99 Cal.App.3d Supp. 1, 7-11.) " 'If no specific intent or other special mental element is required for guilt of the offense charged, a mistake of fact will not be recognized as an excuse unless it was based upon reasonable grounds.' " (*Navarro*, at p. 10.) However, an honest mistake of fact or law is a defense when it negates a required mental element of the crime even though the circumstances would not have led a prudent person to entertain the mistaken belief. (*Ibid.*) When a defendant presents a mistake-of-fact defense to a specific intent crime, CALCRIM No. 3406 must be modified to eliminate the requirement the mistaken belief must be reasonable. (*Russell*, at pp. 1425-1426; Bench Notes to CALCRIM No. 3406 (2013 ed.).)

11

## C

Larson contends, and the People concede, the trial court erred in instructing on the mistake-of-fact defense by giving a modified version of CALCRIM No. 3406 that included the requirement the mistaken belief must be reasonable. The offense of attempted theft of a vehicle is a specific intent crime. At trial, Larson presented evidence (i.e., his own testimony) that he mistakenly believed he was attempting to start his girlfriend's car. That evidence was sufficient to support an instruction on the defense of mistake-of-fact. However, because the charged offense was a specific intent crime, the instruction on that defense (i.e., CALCRIM No. 3406) should have been modified to omit the requirement that the mistaken belief be reasonable. If evidence of a mistake of fact is presented to negate a specific intent element of an offense, the defense of mistake of fact requires only that the mistake be in good faith and not that the belief be reasonable. (*Russell*, *supra*, 144 Cal.App.4th at pp. 1426-1427; *People v. Navarro*, *supra*, 99 Cal.App.3d Supp. at pp. 7-11.) Therefore, the trial court erred in instructing the jury that Larson's purported mistake of fact regarding whose car it was must be a reasonable mistake.

## D

We nevertheless conclude the trial court's instructional error was not prejudicial. Contrary to Larson's conclusory assertion, the standard of prejudice that applies to instructional errors is *not* the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18, 24, but rather the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (Cal. Const., art. VI, § 13; *People v.*

12

*Breverman* (1998) 19 Cal.4th 142, 157; *People v. Hanna* (2013) 218 Cal.App.4th 455, 462-463; *People v. Zamani* (2010) 183 Cal.App.4th 854, 866; *Russell*, *supra*, 144 Cal.App.4th at p. 1431.)  The *Watson* standard of prejudicial error requires the defendant to show it is reasonably probable he or she would have obtained a more favorable result had the instructional error not occurred.  (*Watson*, at p. 836.)  In determining whether such an instructional error was prejudicial, we focus not on what a reasonable jury could have done, but rather what the jury likely would have done in the absence of the error.  (*Breverman*, at p. 177.)  In so doing, we "may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result."  (*Ibid*.)

Based on our review of the record in this case, we conclude the evidence supporting the judgment and the finding--that Larson had the requisite specific intent-- was so relatively strong and the evidence supporting a different outcome was so comparatively weak that there is no reasonable probability Larson would have obtained a more favorable result had the trial court properly instructed the jury on the defense of mistake of fact.  The evidence shows Larson entered the Fonsecas' car (a gray or silver Kia Sportage), picked up house keys from the car's center console, jammed one of the house keys into the car's ignition, and forced the gear shift out of the "park" position in an attempt to start and drive or take the car.  Earlier, Hoefer had asked Larson to leave the parking lot.  When Angelica and Gil approached Larson to ask him about being in the car, he got out of the car and approached them in an aggressive manner.

13

According to the testimonies of Angelica, Felipe and Gil, Larson made no effort during the entire incident to inform them he believed the car belonged to his girlfriend. Likewise, he did not inform the police of his purported mistaken belief. The only evidence to support Larson's purported mistaken belief was his own testimony at trial that the first thing he remembered was waking up in the passenger seat of a car he thought belonged to his girlfriend. Sitting in the driver's seat, he unsuccessfully tried to start the car. He remembered being outside the car and conversing with Felipe, who was very angry and asked him about the car. Larson testified that he told Felipe, "That's my girlfriend's car. That's my car." However, on cross-examination, Larson testified his girlfriend's car was a black Jeep and he could not remember when he last drove it. Based on this evidence, we conclude it is not reasonably probable the jury would have "hung" or found Larson not guilty of attempted theft of a vehicle had it been properly instructed on the mistake-of-fact defense. His girlfriend's car was a black Jeep, and the Fonsecas' car was a gray or silver Kia Sportage. The jury likely inferred from the facts and circumstances of this case that Larson did not have the good faith belief the Fonsecas' car was his girlfriend's car at the time he entered it and attempted to start and drive it away. Furthermore, the jury was properly instructed with CALCRIM Nos. 460 and 1820 on the specific intent required for the offense of attempted theft of a vehicle. We conclude the trial court's error in instructing with a modified version of CALCRIM No. 3406 on the mistake-of-fact defense was harmless. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

14

III

*Failure to Instruct Sua Sponte on the Claim-of-Right Defense*

Larson contends the trial court erred by not instructing sua sponte on the defense of claim of right.

A

The claim-of-right defense applies when the defendant has a belief the property taken belongs to him or her or that the defendant has the right to retake goods, thereby precluding the existence of felonious intent. (*People v. Tufunga* (1999) 21 Cal.4th 935, 943.) "It has long been the rule in this state and generally throughout the country that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. [Citations.] A belief that the property taken belongs to the taker [citations], or that he had a right to retake goods sold [citation] is sufficient to preclude felonious intent. Felonious intent exists only if the actor intends to take the property of another without believing in good faith that he has a right or claim to it." (*People v. Butler* (1967) 65 Cal.2d 569, 573, overruled on another ground in *Tufunga,* at p. 956.)

B

Assuming arguendo there was sufficient evidence to support an instruction on the defense of claim of right in the circumstances in this case, we nevertheless conclude the trial court did not have a sua sponte duty to instruct on that defense. In *People v. Anderson* (2011) 51 Cal.4th 989 (*Anderson*), the California Supreme Court held trial courts do not have a duty to instruct sua sponte on the defense of accident even if

15

substantial evidence supports that instruction, provided the jury is properly instructed on the mental state element of the charged crime. (*Id.* at pp. 996-999.) The court reasoned that the defense of accident serves only to negate the mental state element of the charged crime, and therefore the defense is not the type of defense that invokes the court's sua sponte instructional duties. (*Ibid.*)

*Anderson* stated:

> " 'In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.' [Citation.] That duty extends to ' "instructions on the defendant's theory of the case, including instructions 'as to defenses " 'that the defendant is relying on . . . , or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " ' " ' [Citation.] But ' "when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces reasonable doubt, such 'pinpoint' instructions are not required to be given *sua sponte* and must be given only upon request." ' " (*Anderson*, *supra*, 51 Cal.4th at pp. 996-997.)

Because the defense of accident served only to negate the mental state element of the offense charged, *Anderson* concluded that defense amounted to no more than a claim the defendant acted without forming the mental state necessary to make his action a crime. (*Anderson*, *supra*, 51 Cal.4th at pp. 997-998.) *Anderson* concluded that if the jury is completely and accurately instructed on the mental state element of a charged crime, then a trial court's duty to instruct on the defense of accident "extend[s] no further than to

16

provide an appropriate pinpoint instruction upon request by the defense." (*Id*. at p. 998, fn. omitted.)

Similar to the defense of accident in *Anderson*, an instruction on the defense of claim of right in this case would have served only to negate the mental state element of the crime of attempted theft of a vehicle. Alternatively stated, a claim-of-right defense in this case would have been an attempt only to negate or rebut the prosecution's proof that Larson had the requisite specific intent to commit the underlying offense of vehicle theft. A claim-of-right defense is not a true affirmative defense and therefore there is no sua sponte duty for a trial court to instruct on that defense. (*Anderson*, *supra*, 51 Cal.4th at pp. 996-999; *People v. Sievert* (2013) 219 Cal.App.4th 1476, 1479 ["[w]here a trial court has given complete and accurate instructions on the mental element of the crime charged, it does not have a sua sponte duty to instruct on defenses that, unlike true affirmative defenses, operate only to negate the mental state element of the crime]; *People v. Lawson* (2013) 215 Cal.App.4th 108, 118 [defense of mistake of fact is not a true affirmative defense]; *People v. Petronella* (2013) 218 Cal.App.4th 945, 962-963; *People v. Salas* (2006) 37 Cal.4th 967, 982 [trial court has sua sponte duty to instruct "on any affirmative defense" for which the record contains substantial evidence unless the defense is inconsistent with the defendant's theory of the case].) Even if there was substantial evidence to support an instruction on a claim-of-right defense, the trial court did not have a sua sponte duty to instruct on that defense. In this case, an instruction on a claim-of-right defense would have been a pinpoint instruction that would relate certain evidence to a mental state element (i.e., specific intent) of the charged offense in a defense attempt to

17

raise a reasonable doubt as to that element. Because the trial court did not have a sua sponte duty to give that pinpoint instruction on the claim-of-right defense and Larson did not request such a pinpoint instruction, the trial court did not err by not instructing on the claim-of-right defense.

C

In any event, assuming arguendo the trial court erred by not instructing on the claim-of-right defense, we conclude that error was harmless under the *Watson* standard of prejudice. Contrary to Larson's conclusory assertion, the standard of prejudice that applies to such instructional errors is *not* the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California*, *supra*, 386 U.S. at page 24, but rather the harmless error standard of *Watson*, *supra*, 46 Cal.2d at page 836. (Cal. Const., art. VI, § 13; *People v. Breverman*, *supra*, 19 Cal.4th at p. 157; *People v. Hanna*, *supra*, 218 Cal.App.4th at pp. 462-463; *People v. Zamani*, *supra*, 183 Cal.App.4th at p. 866; *Russell*, *supra*, 144 Cal.App.4th at p. 1431.) The *Watson* standard of prejudicial error requires the defendant to show it is reasonably probable he or she would have obtained a more favorable result had the instructional error not occurred. (*Watson*, at p. 836.)

Based on our review of the record in this case, we conclude the evidence supporting the judgment, and the finding that Larson had the requisite specific intent, was so relatively strong and the evidence supporting a different outcome was so comparatively weak that there is no reasonable probability Larson would have obtained a more favorable result had the trial court instructed the jury on the defense of claim of right. The evidence shows Larson entered the Fonsecas' car (a gray or silver Kia

18

Sportage), picked up the house keys on the car's center console, jammed one of the house keys into the car's ignition, and forced the gear shift out of the "park" position in an attempt to start and drive or take the car. Earlier, Hoefer had asked Larson to leave the parking lot. When Angelica and Gil approached Larson to ask him about being in the car, he got out of the car and approached them in an aggressive manner.

According to the testimonies of Angelica, Felipe and Gil, Larson made no effort during the entire incident to inform them that the car belonged to his girlfriend or that he otherwise had a right or claim to the car. Likewise, he did not inform the police of his purported mistaken belief that he had a right or claim to possession of the car. The only evidence to support Larson's purported mistaken claim of right to the car was his own testimony at trial that the first thing he remembered was waking up in the passenger seat of a car that he thought belonged to his girlfriend. Sitting in the driver's seat, he unsuccessfully tried to start the car. He remembered being outside the car and conversing with Felipe, who was very angry and asked him about the car. Larson testified he told Felipe, "That's my girlfriend's car. That's my car." However, on cross-examination, Larson testified his girlfriend's car was a black Jeep and he could not remember when he last drove it.

Based on this evidence, we conclude it is not reasonably probable the jury would have been "hung" or found Larson not guilty of attempted theft of a vehicle had it been instructed on the claim-of-right defense. His girlfriend's car was a black Jeep, and the Fonsecas' car was a gray or silver Kia Sportage. The jury likely inferred from the facts and circumstances of this case that Larson did not have the good faith belief the Fonsecas'

19

car was his girlfriend's car and he believed in good faith that he had a claim of right to the car at the time he entered it and attempted to start and drive it away. Furthermore, the jury was properly instructed with CALCRIM Nos. 460 and 1820 on the specific intent required for the offense of attempted theft of a vehicle. We conclude any error by the trial court in not instructing on the claim-of-right defense was harmless. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

## IV

### *Restitution and Parole Revocation Fines and Victim Restitution*

Larson contends the trial court abused its discretion in imposing restitution and probation revocation fines and ordering victim restitution.

### A

Before Larson's sentencing, the probation department submitted its sentencing recommendations to the trial court. It recommended the court order Larson to "pay a restitution fine pursuant to [section] 1202.4[, subdivision (b),] in the amount of $2,400, plus penalty assessment. That [he] pay an additional restitution fine pursuant to [section] 1202.45 in the amount of $2,400 to be stayed and remain so unless [his] parole is revoked." It further recommended Larson "pay restitution per [section] 1202.4[, subdivision (f),] to the following victims: Felipe and Angelica Fonseca in the amount(s) shown: $6,650 ($3,800 to Angelica Fonseca and $2,850 to Felipe Fonseca), subject to modification by the court, to be paid forthwith or as provided in [Penal Code section] 2085.5." The report stated the probation officer had been told by the Fonsecas that they had a street sweeping business and thrift store and, because they had to appear in court

20

for Larson's trial, they lost a total of $6,650 (i.e., Angelica lost four days of work at $950 per day for a total of $3,800 and Felipe lost three days of work at $950 per day for a total of $2,850). Although Larson submitted a statement in mitigation, he did not object to or oppose the probation department's recommended fines or amount of victim restitution.

At sentencing, the trial court asked the prosecutor about the Fonsecas' claims for almost $1,000 per day in victim restitution. The court stated the Fonsecas "are claiming basically $1,000 a day for over five days when they were in court as restitution, and I see absolutely no evidence of a job or a contract or anything that pays them $1,000 a day." The prosecutor explained the Fonsecas have a street sweeping business and perform that work personally. After sentencing Larson to a total term of five years for his attempted vehicle theft conviction, the trial court ordered him to pay a restitution fine of $2,400 and an additional $2,400 parole revocation fine, which fine was stayed and would remain stayed unless parole was revoked. The court also ordered him to pay victim restitution of $3,800 to Angelica Fonseca and $2,850 to Felipe Fonseca, for a total of $6,650. Larson did not object to the court's imposition of the fines and victim restitution.

B

Section 1202.4, subdivision (b), provides:

> "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record.
>
> "(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than [$240] . . . and not more than [$10,000]. . . .

21

"(2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."

Section 1202.45, subdivision (a), provides: "In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4."

Section 1202.4, subdivision (f), provides for direct restitution to victims for their economic losses, stating in part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . ." That victim restitution shall be ordered for "[w]ages or profits lost by the victim." (§ 1202.4, subd. (f)(3)(E).)

On appeal, we review the trial court's order regarding restitution fines and victim restitution for abuse of discretion. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.) We will not reverse the order unless it is arbitrary and capricious. (*Gemelli*, at p. 1542.) If there is a rational and factual basis for the amount of restitution ordered, an abuse of discretion will not be found. (*Ibid.*)

22

C

The People assert, and we agree, that Larson has forfeited his challenges to the court's order imposing the restitution fines and victim restitution because he did not object to them at or before his sentencing. An error in imposing a restitution fine "is waived absent a timely objection." (*People v. Walker* (1991) 54 Cal.3d 1013, 1023.) Where the imposition of a restitution fine is recommended in the probation report, a defendant's failure to object to the fine at the sentencing hearing waives any challenge to that fine. (*Ibid.*; *People v. Gamache* (2010) 48 Cal.4th 347, 409; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469 (*Gibson*).) "[T]he need for orderly and efficient administration of the law--i.e., considerations of judicial economy--demand that defendant's failure to object in the trial court to imposition of the restitution fine should preclude him from contesting the fine on appeal. " (*Gibson*, at p. 1469.) *Gibson* explained:

> "Defendants routinely challenge on appeal restitution fines to which they made no objection in the sentencing court. In virtually every case, the probation report put the defendant on notice that a restitution fine would be imposed. Requiring the defendant to object to the fine in the sentencing court if he or she believes it is invalid places no undue burden on the defendant and ensures that the sentencing court will have an opportunity to correct any mistake that might exist, thereby obviating the need for an appeal. Conversely, allowing the defendant to belatedly challenge a restitution fine in the absence of an objection in the sentencing court results in the undue consumption of scarce judicial resources and an unjustifiable expenditure of taxpayer monies." (27 Cal.App.4th at p. 1469.)

Accordingly, *Gibson* concluded: "[I]n the interests of fairness to the sentencing court, fairness to the opposing party, and the needs for an orderly and efficient administration of law and judicial economy, a defendant's failure to object in the trial court to the

23

imposition of a restitution fine constitutes a waiver of the right to complain thereof on appeal." (*Gibson*, *supra*, 27 Cal.App.4th at p. 1469.)

In *People v. McCullough* (2013) 56 Cal.4th 589, the California Supreme Court applied similar reasoning in concluding a challenge to a booking fee for insufficient evidence of the defendant's ability to pay had been waived or forfeited by the defendant's failure to object at the time of sentencing. (*Id.* at pp. 597-599.) The court stated: "[A] defendant who does nothing to put at issue the propriety of imposition of a booking fee forfeits the right to challenge the sufficiency of the evidence to support imposition of the booking fee on appeal." (*Id.* at p. 598.)

The record on appeal does not show Larson objected to the trial court's imposition of the restitution fine, parole revocation fine, or victim restitution at his sentencing. Accordingly, we conclude he has forfeited the right to challenge their imposition on appeal. (*People v. Walker*, *supra*, 54 Cal.3d at p. 1023; *People v. Gamache*, *supra*, 48 Cal.4th at p. 409; *Gibson*, *supra*, 27 Cal.App.4th at p. 1469; *People v. McCullough*, *supra*, 56 Cal.4th at p. 597-599.)

Even were we to address the merits of Larson's challenge to the restitution and parole revocation fines, we nevertheless would conclude he has not carried his burden to show the trial court abused its discretion in imposing those fines. We presume the court exercised its discretion under section 1202.4, subdivision (b)(1), in setting the amounts of those fines at $2,400 in the circumstances of this case. Larson has not carried his burden to rebut that presumption or to otherwise persuade us the court, instead, applied the mathematical formula set forth in section 1202.4, subdivision (b)(2). In contrast, had

Larson objected below to the amount of the victim restitution in this case, it is likely we would have found insufficient evidence to support the total amount of $6,650. Based on this record, we doubt there was substantial evidence to support the Fonsecas' claim that they each lost $950 per day in wages or profits for those days they appeared in court. However, we do not decide the merits of that question considering Larson's forfeiture of his challenge to the victim restitution ordered by the court.

V

*Larson's Other Cases*

Larson's second notice of appeal challenged the judgment as it pertains to two related cases (i.e., San Diego County Superior Court case Nos. SCD233044 & SCD237715). However, because he has not presented any appellate contentions or substantive analysis showing why the court's judgment in those cases should be reversed, he has forfeited his appellate challenges to the judgment in those cases.

DISPOSITION

The judgment is affirmed.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.

25